UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THERESA R. ARGUINZONI,

                          Plaintiff,                    08-CV-6356T

          V.                                            **DECISION**
                                                        **And ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff Theresa Arguinzoni ("Plaintiff") brings this
action pursuant to 42 U.S.C. § 405(g) of the Social Security Act,
claiming that the Commissioner of Social Security improperly
denied her application for Disability Insurance Benefits and
Supplemental Security Income benefits ("SSI"). Specifically, the
plaintiff alleges that the final decision of the Administrative
Law Judge ("ALJ") denying her application for benefits was not
supported by substantial evidence in the record, was contrary to
applicable legal standards, and failed to comply with the Appeals
Council's remand order.

Both the plaintiff and the Commissioner move for judgment on
the pleadings pursuant to Rule 12(c) of the Federal Rules of
Civil Procedure. For the reasons set forth below, this Court
finds that the decision of the Commissioner is supported by
substantial evidence and is based upon valid applicable law. The
Commissioner's motion for judgment on the pleadings is hereby
granted.

## BACKGROUND

Plaintiff filed applications for Disability Insurance Benefits and SSI on April 21, 2003. (Transcript of Administrative Proceedings at pages 134-37) (hereinafter "T."). She was thirty-seven at the time of her application and alleged an inability to work beginning on April 13, 2000, due to degenerative disc disease, disc herniation, and spinal stenosis. (T. 160). Her applications were denied on August 22, 2003, and Plaintiff requested a hearing by an ALJ which was on November 8, 2005. (T. 73-80). The ALJ issued a decision on January 10, 2006, which found the plaintiff was not disabled under the definition in the Social Security Act because she was capable of performing a significant range of work. (T. 61-72, repeated at 115-26). The plaintiff requested review of the ALJ's decision to the Appeals Council, who remanded the case for further proceedings. (T. 47-51, 60). Based upon that remand, the ALJ held a supplemental hearing on October 11, 2006, at which the plaintiff, the plaintiff's attorney, and an impartial vocational expert appeared and testified. (T. 668-717). On January 18, 2007, the ALJ issued a decision finding the plaintiff was not disabled. (T. 20-34). The ALJ's January 2007 decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 11, 2008. (T. 10-12, 44-46). The plaintiff then filed this action on August 4, 2008.

**DISCUSSION**

**I.    Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two

inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

The Commissioner asserts his decision was reasonable and supported by the evidence in the records, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 570 (2007).

## II. __The Commissioner's decision denying the plaintiff benefits was supported by substantial evidence in the record.__

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2004). In addition, an individual's physical or mental impairments are not disabling under the Act unless "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1383(a)(3)(B). See also Berry v. Schweiker, 675 F.2d 464, 466-67 (2d Cir. 1982).

The plaintiff filed applications for both Disability Insurance Benefits and SSI benefits under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Both programs have different statutory criteria to determine eligibility, but they both similarly use the same definition of disability. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). A determination by the Commissioner that a claimant is not disabled under the Social Security Act therefore precludes eligibility in either program.

To be eligible to receive benefits, "an applicant must be 'insured for disability insurance benefits.'" Arnone v. Bowen, 882 F.2d 34, 37 (2d Cir. 1989) (quoting 42 U.S.C. §§ 423(a)(1)(A) & 423(c)(1)). The plaintiff's earning record shows she has acquired sufficient quarters of coverage to remain insured throughout December 31, 2004. Thus, Plaintiff must prove that she was disabled within the meaning of the Social Security Act on or before that date.

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims. 20 C.F.R. § 404.1520. Pursuant to this inquiry:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the Commissioner considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P. If the claimant does not have a listed impairment, the Commissioner inquires whether, despite the claimant's impairment, he has the residual functional capacity to perform his past work. If he is unable to perform his past work, the Commissioner determines whether there is other work which the claimant can perform.

Berry, 675 F.2d at 467.

The ALJ in this case appropriately used the five-step process to determine Plaintiff eligibility for disability benefits, and found that: (i) Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability; (ii) evidence in the record demonstrated that Plaintiff had severe impairments regarding her lower back and neck problems, bipolar disorder, headaches, and obesity; (iii) none of the plaintiff's impairments or combination of impairments met or medically equaled listed impairments set forth in Appendix P of the Social Security regulations; (iv) Plaintiff retained the residual functional capacity to perform sedentary work that does not require climbing or crawling, allows employees

to stand for one minute after sitting for thirty minutes, requires only sufficient attention and concentration to understand, remember and follow simple instructions, and has a low-stress environment which is defined as work involving occasional changes in the work setting, and; (v) the plaintiff could not return to any of her past relevant jobs, but could perform other work existing in the national economy consistent with her medically determinable impairments, such as label packer and preparer. (T. 25-26, 709-10). The ALJ thus concluded the plaintiff was not disabled within the meaning of the Social Security Act. (T. 33). Based on the entire record, I find that the ALJ's determination was supported by substantial evidence and in accordance with relevant applicable law.

## A. The ALJ properly evaluated the plaintiff's medical impairments in the record

The ALJ gave adequate consideration to all of the plaintiff's medically determinable impairments, as required by the Social Security Administration's regulations. See 20 CFR §§ 404.1520(a), 416.920(a)(c). The ALJ found the plaintiff had a severe combination of impairments from lower back and neck problems, bipolar disorder, headaches and obesity, but found that these impairments were not severe enough to prevent Plaintiff from performing work existing in the national economy. He concluded that Plaintiff had the residual functional capacity to perform a full range of sedentary work with certain limitations, discussed *supra*. (T. 25-26).

The plaintiff claims on appeal that the ALJ erred by failing to adequately credit all of her medically determinable impairments, as required by the Appeals Council's remand order. (T. 48-50). Specifically, the plaintiff alleges the ALJ did not give adequate weight to her diagnosed mental impairments of major depression, post traumatic stress disorder (PTSD), and borderline personality disorder.

The ALJ recognized that Plaintiff was diagnosed with major depression, PTSD, and borderline personality disorder by treating psychologist Dr. Kathleen Lewandowski on August 1, 2003. (T. 28, 31, 343, 595, 635). These findings were contrary to a consultative psychiatric evaluation of Plaintiff by Dr. Christine Ransom on July 8, 2003, who found Plaintiff to have expressive and receptive language skills, coherent and goal-directed thought processes, no evidence of hallucinations or paranoia, intact attention and concentration, average intellectual functioning, good insight and good judgment. (T. 322-23). The plaintiff reported stress, difficulty sleeping, irritability, and low self-esteem to Dr. Ransom, but denied anxiety, panic attacks, manic symptomatology, thought disorder, and cognitive symptoms and deficits. (T. 322). Dr. Lewandowski's diagnoses were also not reiterated in a psychiatric review of the record by Dr. Hillary Tzetzo on August 22, 2003, who also opined that if Plaintiff complied with all psychiatric treatment recommendations she should be able to understand and follow basic work directions in a low-contact work setting. (T. 357-78). Furthermore, on

December 17, 2003, Dr. Lewandowski later noted that Plaintiff had unlimited or very good ability to understand, remember, and carry out simple job instructions; a good ability to follow work rules, relate to co-workers, and demonstrate reliability if demands on her were not too great; and a fair ability to understand, remember and carry out complex job instructions or deal with work stresses. (T. 400-01). Lastly, in a form completed on August 28, 2006, at the request of Plaintiff's attorney, Dr. Lewandowski stated that Plaintiff had good ability to comprehend and carry out simple instructions, remember work procedures and respond appropriately to supervision, and indicated her current diagnoses was Axis I: bipolar disorder and PTSD; Axis II: borderline personality disorder. (T. 593-95).

The ultimate determination of whether a claimant is disabled and cannot work is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1). A denial of a disability benefits claim because the Commissioner determines that claimant did not suffer from medically severe impairments significantly limiting claimant's ability to perform basic work activities is consistent with the statutory definition of disability under the Social Security Act, which defines disability in terms of the effects physical or mental impairments have on a person's ability to function in the workplace. See Bowen v. Yuckert, 482 U.S. 137, 146-50 (1987) (citing 20 C.F.R. §§ 404.1520(c), 404.1521). In addition, the claimant has the initial burden of showing her impairment precludes her from participating in substantial

gainful employment.  See Singletary v. Apfel, 981 F.Supp. 802, 805 (W.D.N.Y. 1997) (citing Berry, 675 F.2d at 467; Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983)).

Plaintiff's claimed impairments of major depression, PTSD, and borderline personality disorder were diagnosed by Dr. Lewandowski only and otherwise were not present in the record.  Dr. Lewandowski did not opine or state possible limitations the plaintiff had due to PTSD or borderline personality disorder, and did not include depression as a diagnosis in her most recent opinion regarding the plaintiff's mental impairments. (T. 635).  Rather, the weight of evidence in the record indicates Plaintiff's mental impairments and functional impairments are not severe enough to prevent her from performing substantial employment existing in the national economy.  Plaintiff points out that Dr. Lewandowski's opinion provided in a checklist evaluation indicated that the plaintiff only had "fair" ability to function independently on a job, etc. and a "poor" ability to exercise appropriate judgment.  However, the ALJ correctly noted in evaluating this evidence that Dr. Lewandowski indicated "no current information" was available for these opinions. (T. 30-31). Therefore, the ALJ's finding that Plaintiff's sole severe mental impairment was bipolar disorder in step two of the five-step sequential evaluation of disability was reasonable and supported by substantial evidence in the record. Furthermore, when determining how plaintiff's impairments affected her ability to engage in substantial gainful work, the

ALJ considered plaintiff's extrinsic alleged mental limitations and incorporated those impairments in his questioning of the impartial vocational expert ("VE"). (T. 710). "'[T]ake the limitations of hypothetical number one [discussing Plaintiff's physical impairments] and add to it that due to the effects depression and, and pain... the individual would be off task 25 percent of the time because of impaired concentration.'" Id. Therefore, any error in determining the plaintiff's medical impairments in step two of the required process caused no harm to the plaintiff because the ALJ considered all alleged mental limitations in his determination of the plaintiff's residual functional capacity ("RFC") in step four and as applied by the questioning of the VE in step five.

The plaintiff also claims that though the ALJ found Plaintiff's impairments from obesity, cervical pain and headaches were severe, the ALJ did not describe the limitations arising out of those impairments. The effects and limitations impairments have on the plaintiff's ability to sustain work activity, however, are considered by the ALJ in making his determination of Plaintiff's RFC. RFC is what work the claimant is able to do despite limitations arising out of her impairments. 20 C.F.R. §§ 404.1545, 416.945. As discussed supra, the ALJ found that Plaintiff's impairments did not prevent her from performing sedentary work with additional limitations.

This determination was supported by substantial evidence in the record. The medical findings which spanned over six years

consistently revealed that Plaintiff had mild muscle tenderness, normal gait and station, ability to ambulate without difficulty, negative straight leg raises, normal strength, no neurological deficits, and no sensory abnormalities. (T. 209-14, 219-20, 224, 268, 303-04, 319, 405, 408-12, 417, 565, 577-78, 587-88). X-rays of Plaintiff's lower back revealed minimal degenerative changes, no evidence of acute bony injury, and mild scoliosis, and MRIs revealed degenerative disc disease, normal vertebral bodies, and mild spinal canal stenosis. (T. 205-06, 215-17, 320, 461, 464-66). X-rays of pelvis and left hip were normal, as well as EMG studies. (T. 219, 462). Furthermore, the substantial weight of medical opinions in the record indicated that while Plaintiff was limited with bending, twisting, climbing or crawling, she could perform work that allowed alternating between sitting and standing and could lift, carry, push or pull a small amount of weight. (T. 271, 277, 282, 291, 293, 296, 416, 455-56, 457-58, 578). This evidence, when evaluated in conjunction with Plaintiff's alleged mental impairments discussed above, supports the ALJ's finding that Plaintiff could perform sedentary work with additional limitations. Therefore, the limitations arising out of Plaintiff's impairments, such as obesity, were adequately considered as requested by the Appeals Council through the ALJ's determination of Plaintiff's RFC and the incorporation of those limitations in the ALJ's questioning of the VE.

Finally, the plaintiff claims that the ALJ failed to appropriately evaluate her subjective complaints. Specifically,

the plaintiff alleges that the ALJ's statement that "[a]fter considering the evidence of record, I find that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms, are not entirely credible" (T. 27) contravenes SSR 96-7p which states, "[i]t is not sufficient for the adjudication to make a single conclusory statement that: 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible." SSR 96-7p, 1996 WL 374186 *2 (SSA).

"It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence." Hogan v. Astrue, 491 F.Supp. 2d 347, 352 (W.D.N.Y. 2007) (citing Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984)). Where the ALJ's credibility analysis and factual findings are based on application of proper legal principles, the court may not examine the evidence and substitute its own judgment for that of the Commissioner. 42 U.S.C. § 405(g); Parker v. Harris, 626 F.2d 225 (2d Cir. 1980); see also Glaze v. Barnhart, 242 F. Supp. 2d 233, 236 (W.D.N.Y. 2003). The Commissioner has promulgated the following two-step process to evaluate a claimant's testimony regarding his symptoms, including pain:

> "First, the ALJ must consider whether the claimant
> has a medically determinable impairment which
> could reasonably be expected to produce the pain
> or symptoms alleged by the claimant. Second, if
> the ALJ determines that the claimant is impaired,

> he then must evaluate the intensity, persistence,
> and limiting effects of the claimant's symptoms.
> If the claimant's statements about [her] symptoms
> are not substantiated by objective medical
> evidence, the ALJ must make a finding as to the
> claimant's credibility."

Matejka v. Barnhart, 386 F.Supp. 2d 198, 205 (W.D.N.Y., 2005)

(citing Murphy v. Barnhart, No. 00 Civ. 9621, 2003 WL 470572,

*10-11 (S.D.N.Y., 2003); 20 C.F.R. § 404.1529(c)).

In this case, the ALJ did not just issue a single conclusory

statement that the plaintiff's subjective claims were not

credible. The ALJ also noted that Plaintiff was "twice convicted

of welfare fraud, a fact that severely erodes her credibility."

(T. 29). He also noted that the plaintiff saw Dr. Wong alleging

neck pain, numbness and tingling in her left arm due to a car

accident eighteen years earlier that did not prevent the claimant

from working previously. Id. Due to the broad discretion given

to the ALJ in credibility determinations, I find that he properly

evaluated plaintiff's credibility.

**B.    The ALJ's alleged failure to explicitly document
        application of "special technique" required by
        20 C.F.R. § 404.1520a in evaluating severity of
        Plaintiff's mental impairments was harmless error**

In addition to the five-step framework for evaluating

disability claims, the Commissioner has promulgated regulations

governing the evaluation of the severity of mental impairments.

20 C.F.R. § 404.1520a. These regulations require application of

a "special technique" at the second and third steps of the five-

step framework and at each level of administrative review.

Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citing Schmidt v. Astrue, 496 F.3d 833, 844 n. 4 (7th Cir. 2007)). If the claimant has a medically determinable mental impairment, this technique requires the ALJ to "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," 20 C.F.R. § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). "[I]f the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority will conclude that claimant's mental impairment is not "severe" and will deny benefits. Kohler, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(d)(1)). If the claimant's mental impairment is severe, the reviewing authority will determine whether the impairment meets or is equivalent in severity to any listed mental disorder. Id. If so, the claimant will be found to be disabled; if not, reviewing authority will then assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3).

The regulations require application of this process to be documented. Id. at § 404.1520a(e). The consequence of noncompliance in this Circuit, however, has not been throughly examined. See Kohler, 546 F.3d at 266 ("The consequence of noncompliance with 20 C.F.R. § 404.1520a is a matter of first

impression in this Circuit."). In <u>Kohler</u>, the Court notes that other courts of appeals have remanded the ALJ's decision when a failure to consider these factors impacts the ALJ's determination of a claimant's RFC. <u>See</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1214 (11th Cir. 2005). The Second Circuit also notes the importance of recording specific findings in each of the four functional areas in order to permit adequate review on appeal. <u>See</u> <u>Kohler</u>, 546 F.3d at 267. The Second Circuit explicitly, however, "leave[s] open the possibility that an ALJ's failure to adhere to the regulations' special technique might under other facts be harmless." <u>Id.</u> at 269.

In this case, the ALJ does not appear to have recorded specific findings as to Plaintiff's degree of limitations in each of the four areas, at least explicitly. He did, however, highlight pertinent medical opinions in the record relating to daily living (T.28 ("When asked about her activities of daily living the [plaintiff] reported that she was able to cook, clean, do laundry, go shopping, shower, bathe, dress herself, watch T.V. and listen to the radio.... She occasionally does not take care of daily hygiene and grooming; but that she is able to cook and prepare meals, do laundry, drive a car, go grocery shopping and manage her money.")), social functioning (T.27 ("[Plaintiff] alleged that she feels fatigue and naps once-or-twice during day for a couple of hours... She stated that she likes to walk."), T. 28 ("[Plaintiff] would have moderate difficulty relating adequately with others and dealing with stress.")),

concentration, persistence or pace (T. 28 ("Dr. Ransom concluded that the claimant could follow and understand simple directions; perform simple rote tasks; maintain attention and concentration for tasks; perform simple tasks; learn new tasks; perform complex tasks; and make appropriate decisions."), and findings related to decompensation (T. 31 ("Dr. Lewandowski said that the claimant's condition was likely to deteriorate under stress and that the claimant had a history of increased symptoms under stress.")), however, Dr. Lewandowski made no specific findings related to episodes of decompensation. Instead of explicitly documenting specific findings regarding Plaintiff's degree of limitation in each of the four functional areas, the ALJ summarily concluded that he had "taken into consideration the limitations reported by all of the claimant's medical sources in developing the residual functional capacity used in this decision." (T. 31). Using a conclusory statement in lieu of "specific finding[s] as to the degree of limitation in each of the functional areas" central to the special technique likely violates regulations promulgated by the Commissioner to govern mental impairment regulations. 20 C.F.R. § 1520a(e)(2). But see Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13-14 (S.D.N.Y. 2007) (finding courts have held that although a function-by-function analysis is desirable, the regulations do not require ALJs to produce a detailed statement in writing) (internal citations omitted). However, remand to correct this procedural error is not appropriate in this case. See Kohler, 546 F.3d at 260 (Second Circuit used a harmless error

analysis and remanded the case when an ALJ's failure to adhere to regulations "frustrated effective review.").

Unlike Kohler, it is not unclear whether the ALJ would have arrived at the same conclusion regarding Kohler's RFC if he adhered to the regulations. Furthermore, the medical opinion evidence discussed *supra* supports the Commissioner's RFC determination. The ALJ considered the entire record and made a determination regarding Plaintiff's RFC considering the four functional areas central to the special technique. While he failed to document specific findings as to the degree of limitation in each functional area, the ALJ still ultimately highlighted his findings and conducted a sufficient analysis to permit adequate review on appeal in this case. Due to the weight of the evidence and the ALJ's determinations, I am convinced that the ALJ's error was harmless in this case.

**C.    The ALJ's failure to evaluate the weight assigned to each medical opinion under 20 C.F.R. § 404.1527(d) was harmless error.**

The law gives "special evidentiary weight" to the opinion of a treating physician. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Specifically, if the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record," the opinion has controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If a treating physician's opinion is not given controlling weight, the ALJ must apply the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); 20 C.F.R. § 404.1527(d). The ALJ is required to specifically state the weight accorded to each treating doctor's opinion. See Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).

In his decision, the ALJ explicitly noted and highlighted pertinent medical opinion evidence in the record regarding the plaintiff's disability claim.  (T. 27-32).  He does not, however, identify which medical opinions are given controlling weight, nor does he apply the factors required to evaluate an opinion not given controlling weight.  Nevertheless, this oversight was harmless error and does not provide a basis for a remand to the Commissioner.  The ALJ engaged in a detailed discussion of the medical opinions in the record and his determination that the plaintiff was not disabled does not conflict with the medical opinions.  See Duvergel v. Apfel, 2000 WL 328593, at *11 (S.D.N.Y. Mar. 29, 2002); Walzer v. Chater, 1995 WL 791963 at *9 (S.D.N.Y. Sept. 26, 1995) (finding that an ALJ's failure to

discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (harmless error rule applies to review of denial of disability benefits). Even if the ALJ explicitly identified the amount of weight given to each treating physician's opinion, that consideration would not have changed the outcome of the hearing determination because the ALJ's decision denying the plaintiff's claim was supported by substantial evidence in the record. See Lynch v. Astrue, WL 3413899 at *5 (W.D.N.Y. Aug. 8, 2008) (finding ALJ failure to refer to treating doctor's report is harmless error because consideration of the information contained in the reports would not have changed the outcome of the ALJ's determination); see e.g., Seltzer v. Comm'r of Soc. Sec., 2007 WL 4561120, at *10 (E.D.N.Y. Dec. 18, 2007) (finding harmless error can occur even if ALJ fails to affirmatively develop the record or consider all relevant evidence). Therefore, because the ALJ appropriately considered the medical evidence in making his decision and his failure to document the weight given to each treating opinion was harmless, his determination that the plaintiff is not disabled within the definition of the Social Security Act is supported by substantial evidence and is affirmed.

## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for

judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


                                        S/Michael A. Telesca
                              _____
                                   MICHAEL A. TELESCA
                              United States District Judge

Dated:     Rochester, New York
           June 22, 2009